*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ALEXANDER, Minors.

UNPUBLISHED
April 11, 2019

No. 346129
Oakland Circuit Court
Family Division
LC No. 2018-859909-NA

Before: LETICA, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to three minor children, BA, AA and LA, under MCL 712A.19b(3)(b)(*i*) (physical or sexual abuse), (g) (failure to provide proper care and custody), (j) (child is reasonably likely to be harmed if returned to the parent's home), (k)(*iii*) (severe physical abuse of the child or a sibling), and (k)(*ix*) (parent sexually abused the child or a sibling). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent is the biological grandfather and adoptive father of the three minor children. The parental rights of the children's biological parents were terminated in 2008, and they were not a party to these proceedings.

In January 2018, petitioner filed a petition requesting removal of the children from respondent's home and termination of his parental rights. The petition alleged ongoing physical abuse of all three children, which the children had disclosed during forensic interviews following a December 31, 2017 incident in which respondent had physically abused BA in the presence of the other two children. AA called the police during this incident, and respondent was arrested. The petition also alleged that AA had disclosed that respondent had inappropriately touched her on her waist, upper thighs, and stomach.

The trial court authorized the petition and removed the children from respondent's care. The children were initially placed with their adult sister, but were later placed with a niece of respondent. The trial court held a jurisdictional trial and termination hearing in April 2018. The children all testified to an incident in December 2017 in which respondent repeatedly held BA

-1-

down, slapped her face and forearms, threw her on the floor, and kicked her. LA testified that respondent had also hit her on the face, neck, and arm, and had grabbed her and thrown her on the couch during this incident. Police officers responding to the incident testified that they found the girls terrified and crying in the bathroom. Respondent was arrested for domestic violence. Several officers also testified that the house was very dirty and messy, and smelled of cigarettes and cat urine.

Margaret Klenner, a nurse practitioner at Henry Ford Macomb Hospital who had examined all three girls at the hospital's emergency room after the incident, testified that none of the children appeared to be dressed sufficiently for the cold weather and that they were not wearing bras, were dirty, and smelled like they had not bathed in days. BA had abrasions on her forehead and face. The three children told Klenner that respondent had been abusing them physically for years as well as calling them names and swearing at them. AA also disclosed the inappropriate touching described earlier in this opinion.

Tara Allender, a Child Protective Services (CPS) investigator, testified that there had been a total of 14 complaints of physical abuse of the children against respondent and his live-in female partners. An allegation in 2010 had been substantiated and respondent had been referred for parenting classes, although it was not known whether he completed the classes. Allender opined that the children would be in imminent risk of physical and mental harm, as well as the potential for sexual abuse, if they were returned to respondent.

The trial court found sufficient grounds to terminate respondent's parental rights to the children under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*iii*), and (k)(*ix*), finding that all three children had suffered from years of physical abuse, "extreme mental anguish" and fear for their safety. The trial court additionally found that respondent's home was not a suitable living environment for the children.

A best-interest hearing was held immediately after the trial court's determination. Diana Vitale, a psychiatric nurse practitioner, testified that she had prescribed an antidepressant for BA and LA, but that respondent had refused to provide parental consent for the children to take the medication. The trial court ordered that the children be given the medication. Christina Markarov, the children's therapist, testified that all of the children suffered from post-traumatic stress disorder (PTSD) and that BA and LA suffered from depression. Andrea Killips, the children's foster care specialist, testified that, since their removal, the children had improved significantly with hygiene, grades, and gaining weight, and were eating appropriately (whereas they previously were emaciated from being underfed); however, they still had behavioral issues. Killips further testified that she had conducted home visits and that the condition of respondent's home had not improved. She testified that respondent had sought to have the children removed from their placement several times, had resisted the provision of medication to the children, and had resisted allowing the children to travel with their foster parent, necessitating court involvement. Killips opined that this behavior was "spiteful" rather than rooted in a concern for the children's best interests.

Following the best-interest hearing, but before the trial court issued its decision, petitioner requested that the children's placement be changed to unrelated caregivers whom the children had visited several times in the past. At the hearing on the motion, the prospective

foster parents stated that they lived close to the children's current foster parent and could continue to facilitate that family relationship, but that they had more time and resources to accommodate the children's needs, such as giving transportation to various therapy appointments. The trial court allowed the change, but only on the condition that the prospective foster parents would meet with the therapist to discuss the move and how to communicate about the move with the children. The trial court proposed shared parenting time between the two foster homes initially to ease the transition.

The trial court issued a written opinion and order concluding that it was in the best interests of the children to terminate respondent's parental rights. The trial court noted that respondent and his partner continued to be angry and aggressive, despite being monitored during the proceedings. The trial court also noted that respondent did not believe that his actions, such as his refusal to allow BA and LA to take medication, were harmful to the children. The trial court found that the children had improved since their removal from respondent's care and that they were terrified of being returned to him. The trial court noted that the children needed the permanency and stability of a suitable home environment.

This appeal followed.

## II. STANDARD OF REVIEW

We review for clear error a trial court's determination regarding a child's best interests. MCR 3.977(K); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "A trial court's decision is clearly erroneous '[i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012).

## III. ANALYSIS

Respondent's sole argument on appeal is that, in making its best-interest determination, the trial court failed to consider that the children were in relative placement at the time of the termination hearing. We disagree.

Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds that termination is in the child's best interests. MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court should weigh all the evidence available to it in determining the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Factors relevant to a determination of the child's best interests include the child's bond to the parent, the parent's compliance with his or her case-service plan, the parent's history of visitation with the child, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, and the possibility of adoption. *Id*. at 713-714.

In *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010), our Supreme Court stated that a child's placement with relatives "was an explicit factor to consider in determining whether termination was in the children's best interests," explaining that a parent's voluntary placement

of his children with relatives was relevant to whether a parent could fulfill his duty to provide proper care and custody in the future. *Id*. at 163; see also *In re Mays*, 490 Mich 993 (2012) (holding that the factual record was inadequate to make a best-interest determination because there was no evidence in the record that the trial court considered whether termination of the respondent's parental rights was appropriate given the children's placement with their maternal grandmother).

In *Olive/Metts*, this Court stated:

[b]ecause "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," the fact that a child is living with relatives *when the case proceeds to termination* is a factor to be considered in determining whether termination is in the child's best interests. Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, the fact that the children are in the care of a relative *at the time of the termination* hearing is an "explicit factor to consider in determining whether termination was in the children's best interests[.]" A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal. [*In re Olive/Metts*, 297 Mich App at 43 (emphasis added; citations omitted).]

In this case, respondent's argument that the trial court failed to consider the children's relative placement at the time of the termination hearing is belied by the trial court's opinion. Contrary to respondent's argument, the trial court acknowledged the children's relative placement several times, and made reference to the issues respondent had with that placement. Specifically, the trial court referenced the foster care worker's testimony that

Father has had a problem with the relative placement and has made things difficult in this regard, which is troubling to her. He has requested multiple times that Minors be moved from their placement despite the girls doing well. During a family team meeting, Father made enough inappropriate comments that Ms. Killip[s] had to conclude the meeting.

The trial court concluded that respondent was unlikely to rectify any of the conditions that brought the children into care, in part because of his continued angry and aggressive behavior. The trial court also noted that the children had made improvements in the foster home, and needed permanency and stability in a suitable home environment.

The record therefore establishes that the trial court considered the children's relative placement at the time of the termination hearing. Moreover, given that respondent repeatedly refused to facilitate the children's placement with their foster-parent relative by permitting the children to take medication and travel with the foster parent, but at the same time failed to make the necessary changes to provide them with a home, the trial court did not clearly err by finding

that termination of respondent's parental rights was in the children's best interests despite the relative placement.[1] *In re Olive/Metts*, 297 Mich App at 43.

Affirmed.

/s/ Anica Letica
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra

---

[1] As stated, the relative placement changed to a non-relative placement after the best-interest hearing, but before the trial court issued its best-interest decision. The prosecutor and the lawyer-guardian ad litem for the children therefore argue that there would be no error even if the trial court had failed to consider the issue of relative placement. But because the trial court actually considered the children's relative placement, notwithstanding that the placement was changed before it is issued its best-interest opinion, it is unnecessary to address whether the trial court would have reversibly erred had it failed to consider that placement in these circumstances. By our reading, however, the pertinent holding of *Olive-Metts* related not to the precise time frame within which to consider relative placement, but the need to consider relative placement on an individual basis where the circumstances of the children differ. See *In re White*, 303 Mich App 701, 715; 846 NW2d 61 (2014).